**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

TRI-STATE PROFESSIONALS, INC.:

    **Plaintiff**      :      CIVIL ACTION NO. 3:07-1220

    **v**      :

     :      (MANNION, M.J.)

SMITH BARNEY a Division of      :
Citigroup Global Markets, Inc.
     :
    **Defendant**

# AMENDED
# MEMORANDUM AND ORDER

Pending before the court is the defendant's partial Motion to Dismiss Counts II and III of the plaintiff's complaint. (Doc. Nos. 3, 4). Upon review of the record, the defendant's motion will be granted.

**I.**      **Background and Procedural History**

On July 19, 2002, the defendant ("tenant") entered into a lease with the plaintiff ("landlord") for a term of ten years. (Doc. No. 3-2, Ex. A). The lease requires the tenant to pay rent in the amount of $705,000.00, payable in equal monthly installments, in order to occupy commercial premises of the landlord's building located in Milford, Pennsylvania. Id. art. I. In addition to fixed rent, the tenant is also required to pay a proportionate share of the landlord's annual operating expenses.[1] The relevant clause, Payment of

---

[1] The lease defines "operating expenses" as "[t]axes, and the reasonable, actual and competitive costs paid by Landlord in the management, operation, and maintenance of the Building and Common Areas

Operating Expenses, provides in pertinent part:

> Tenant will pay to Landlord, in equal monthly installments payable with each installment of Fixed Rent, the cost of Estimated Operating Expenses. Estimated Operating Expenses shall be Landlord's estimate of Operating Expenses due from Tenant for the current calendar year of the Term. . . . Operating Expenses shall be determined on a accrual basis for each calendar year. Within sixty (60) days from the end of each calendar year in the Term, Landlord shall furnish to Tenant a written statement showing in reasonable detail the information relevant or necessary to the exact calculation and determination of Landlord's true and actual Operating Expenses for the preceding calendar year. . . . If the Operating Expenses payable by the Tenant for the preceding calendar year are more than the Estimated Operating Expenses paid by Tenant, then Tenant shall pay to Landlord within sixty (60) days after Tenant's receipt of Landlord's statement of Operating Expenses due from Tenant, the difference between (1) Tenant's Proportionate Share of the actual Operating Expenses for the preceding calendar year and (ii) the total sum paid by Tenant during the preceding calendar year for Operating Expenses.

Id. art. 5.2(B). The tenant has a right to audit the landlord's statement of operating expenses: "Tenant's employees, accountants, or representatives shall have the right to audit Operating Expenses and in connection therewith to examine Landlord's Operating Expenses . . . ." Id. art. 5.2(D). The lease is silent, however, concerning whether the tenant, when exercising the right to audit, is allowed to withhold payment of operating expenses while the audit is occurring.[2] As of May 2007, the defendant has commenced an audit of the

---

thereof . . . ." Id. art. 5.2(c).

[2]  It should also be noted that the lease does not contain a liquidated damages, rent acceleration, or use and occupancy clause.

2

2006 operating expenses and has vacated the premises, but continues to pay monthly fixed rent due to the plaintiff. (Doc. Nos. 1 Ex. A; 5).

On June 6, 2007, the plaintiff commenced this action by filing a complaint in the Court of Common Pleas of Pike County, Pennsylvania, claiming anticipatory breach of the lease and seeking damages in excess of $75,000. (Doc. No. 1 Ex. A). In Count I of the complaint, the plaintiff seeks to recover operating expenses due for 2006. Id. In Count II, the plaintiff seeks to accelerate and recover the operating expenses due for the remainder of the lease term. Id. And in Count III, the plaintiff alleges that the defendant's vacating of the premises without written notice constitutes an anticipatory breach of the lease agreement, which entitles the plaintiff to an acceleration of fixed rent due for the remainder of the lease term. Id. On July 6, 2007, the defendant filed in this court a Notice of Removal asserting diversity jurisdiction. (Doc. No. 1). The parties consented to proceed before the undersigned, which was so ordered on August 20, 2007. (Doc. No. 9). On July 12, 2007, the defendant filed the instant partial motion to dismiss Counts II and III of the complaint, (Doc. Nos. 3, 4), together with a supporting brief, (Doc. No. 5). The plaintiff filed a brief in opposition on August 3, 2007. (Doc. No. 6). The defendant did not file a reply. This matter is now ripe for disposition.

**II.    Standard of Review**

The defendant's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Review of a motion to dismiss is limited to the face of the plaintiff's complaint, whereby the court must accept all factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor.  Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)); NAPA Transp., Inc. v. Travelers Prop. Cas., No. 06-cv-1866, 2006 U.S. Dist. LEXIS 84166, at *4 (M.D. Pa. Nov. 20, 2006). A court may also consider the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his or her claim.  Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006) (citing  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To prevail on a Rule 12(b)(6) motion, the defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  Martella v. Wiley, No. 06-cv-1702, 2007 U.S. Dist. LEXIS 28242, at *9 (M.D. Pa. Apr. 17, 2007) (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)); see also F. R. Civ. P. 12(b)(6). Under the federal notice pleading standard, "a complaint requires only 'a short and plain statement' to show a right to relief, not a detailed

recitation of the proof that will in the end establish such a right." Pryor v. NCAA, 288 F.3d 548, 564 (3d Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)); F. R. Civ. P. 8(a)(2). Because of this liberal pleading policy, a court should not grant dismissal unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Trump Hotel & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (holding that dismissal is appropriate "only if . . . no relief could be granted under any set of facts consistent with the allegations of the complaint"); accord Martella, 2007 U.S. Dist. LEXIS at *8.

**III.   Discussion**

As a preliminary matter, Pennsylvania law governs this action. See 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). In addition, Article 10.2(A) of the lease states, "This Lease shall be governed by and construed in accordance with the laws of the State or Commonwealth in which the Building is located." Under Pennsylvania's choice of law rules, courts will follow a contractual choice of law provision set out by the parties provided that the state chosen bears a reasonable relation to the parties or the transaction.

Novus Franchising Inc. v. Taylor, 795 F. Supp. 122, 126 (M.D. Pa. 1992). Because the subject premises is located in Milford, Pennsylvania, and because leases are in the nature of contracts, this court shall apply Pennsylvania substantive contract law to this case. See 2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila., 466 A.2d 132, 136 (Pa. 1983).

### A.   Count II

In Count II of the complaint, the plaintiff alleges that although the defendant has a right to audit operating expenses, that right does not carry the concurrent right to withhold payment of such expenses.  (Doc. No. 1, Ex. A, ¶ 19).  The plaintiff asserts that the defendant's "delays in payment constitute[] a course of conduct by the Tenant evidencing its intention to unreasonably challenge the additional Operating Expenses and delay payment which will continue to cause the Landlord unnecessary hardship." Id. ¶ 20. As noted above, the plaintiff seeks to accelerate and recover the operating expenses it alleges will be due for the remainder of the lease, in the amount of $1,073,786.05. Id.

Accepting all factual allegations as true and drawing all reasonable inferences therefrom, it is clear from the face of the complaint that the plaintiff has failed to state a claim upon which relief can be granted.  The plaintiff seeks remedies that the lease clearly does not provide.  In the event the tenant decides to audit operating expenses, the lease does not specify a time

for performance for payment of such operating expenses,[3] nor does it mandate that the tenant pay the landlord the amount under protest, or at least put the amount in escrow during the audit period. The fact that the lease contains an integration clause underscores the parties' intent to perform under the lease as written. (Doc. No. 3-2 Ex. A, art. 10.2(D)); see also Betz Labs., Inc. v. Hines, 647 F.2d 402, 406-07 (3d Cir. 1981) (noting that an integration clause is strong evidence that a contract is the complete agreement of the parties); Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) ("Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to not only be the best, but the only, evidence of their agreement."). Because the plaintiff has not alleged fraud, accident, duress, or mutual mistake in the lease's formation, the lease is conclusively presumed to be the complete agreement between the parties. Harrison v. Fred S. James, P.A., Inc., 558 F. Supp. 438, 442 (E.D. Pa. 1983) (citing Scott v. Bryn Mawr Arms, 312 A.3d 592, 594 (Pa. 1973); U.S. Gypsum Co. v. Schiavo Bros., Inc.,450 F. Supp. 1291, 1302 (E.D. Pa. 1981)). Therefore, absent express terms to the contrary, the defendant cannot be liable for breach of contract for withholding payment

---

[3] However, where a contract does not indicate that time is of the essence, the court will infer that the parties intended a reasonable time for completion of performance. See, e.g., Commonwealth v. Pendleton, 389 A.2d 532, 535 (Pa. 1978) (citing Wilcox v. Regester, 207 A.2d 817, 820 (Pa. 1965)).

of operating expenses during an audit, whatever hardship the alleged delay has caused notwithstanding.  The plaintiff cannot also characterize the defendant's intent to challenge the additional operating expenses as "unreasonable," because the lease sets forth plain and unambiguous terms that a tenant has every right to audit such expenses.

In addition, the lease does not contain an acceleration clause that would entitle the landlord to receive payment of prospective rent or operating expenses for the remainder of the lease term.[4]  See Pierce v. Hoffstot, 236 A.2d 828, 830 (Pa. Super. Ct. 1967) (holding that rental acceleration clauses are valid under Pennsylvania law).  Where, as here, the lease does not provide any terms for acceleration, the plaintiff cannot recover any future payments because no such agreement exists. See Onal v. B.P. Amoco Corp., 275 F. Supp. 2d 650, 669-71 (E.D. Pa. 2003) (denying the landlord's post-trial motion for the collection of future rentals and other payments because the commercial lease lacked an acceleration clause).  Count II shall therefore be dismissed.

### B. Count III

In Count III, the plaintiff alleges that the defendant anticipatorily

---

[4] In the event of the tenant's default, the lease provides various rights and remedies for the landlord, none of which include the acceleration of rent due.  See (Doc. No. 3-2 Ex. A, art. 9.1).

breached the contract when it vacated the premises without written notice. (Doc. No. 1 Ex. A ¶¶ 21-26). The plaintiff claims that even though the defendant continues to pay monthly fixed rent, such anticipatory breach of the lease entitles it to an acceleration of all rent due under the lease term, or $410,000.00. Id.  The defendant argues that not only does non-occupation of the premises fail to constitute an anticipatory breach as a matter of law and under the lease terms, but the fact that the defendant continues to pay monthly rent also indicates that no such breach has occurred. (Doc. No. 3).

      The plaintiff has again failed to state a claim with respect to Count III. First, the defendant is correct in asserting that its having vacated the premises, without more, does not rise to the level of an anticipatory breach required by law. Under Pennsylvania law, an anticipatory breach of contract requires more than just a threat of non-performance.  2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies, 466 A.2d 132, 136 (Pa. Super. Ct. 1983), aff'd 489 A.2d 733 (Pa. 1985).  Rather, "[i]n order to give rise to a renunciation amounting to a breach of contract, there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." Id. (quoting McClelland v. New Amsterdam Casualty Co., 185 A. 198, 200 (Pa. 1936)) (emphasis added); see also Edwards v. Wyatt, 335 F.3d 261, 272 (3d Cir. 2003). Otherwise stated, "An anticipatory breach of contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement

by a party that he will not or cannot perform in accordance with [the] agreement creates such a breach." Jonnet Dev. Corp. v. Dietrich Indus., Inc., 463 A.2d 1026, 1031 (Pa. Super. Ct. 1983) (quoting Wolgin v. Atlas United Fin. Corp., 397 F. Supp. 1003, 1014 (E.D. Pa. 1975)). An example of an unequivocal refusal to perform is found in General Diversified, Inc. v. Poole Truck Line, Inc., where a contracting party communicated that he had "no other choice than to cancel our agreement of August 7, 1987" as "the atmosphere is not just one in which I nor Poole can do business." 1991 U.S. Dist. LEXIS 4585, at *18-19 (E.D. Pa. Apr. 4, 1991).

In this case, the defendant's mere vacating of the premises is insufficient to meet the standard of an anticipatory breach. The defendant has yet to unequivocally declare that it will not or cannot perform in accordance with the lease agreement. See Jonnet Dev. Corp., 463 A.2d at 1031. Nor does the plaintiff allege that the defendant communicated its intent to cease performance of its duties. Furthermore, the defendant's continued payment of rent undermines any allegation that non-occupation manifests an absolute repudiation of the lease.

Second, a tenant's duty to occupy the leased premises is not implied-in-law, but is imposed only by contract. 2401 Pennsylvania Ave., 466 A.3d at 137. Absent a contractual duty to "use and occupy" the premises, only two inherent obligations govern the landlord-tenant relationship: "the right to possession of the leasehold by the tenant and the corresponding right to

receive rent payments by the landlord." Id.  In the lease agreement at issue, there is no requirement that the tenant occupy the premises throughout the lease term. The only provisions that discuss use and occupancy are the following:

> Article 7 - Tenant's Additional Covenants and Rights
>
> Section 7.1 - Affirmative Covenants
> A.   Use and Premises - Tenant shall only use the Premises for the Permitted Use[5] during the Term.
> F.   Surrender of Premises - At the expiration or earlier termination of this Lease, Tenant shall surrender to Landlord the Premises in good order and condition . . . in accordance with the terms of this Lease.
>
> Section 7.2 - Negative Covenants
> A.   Assignment and Subletting - Tenant covenants at all times during the term that:[6]
> (a)  Tenant shall not, without the written consent of the Landlord, assign, sublease, convey, encumber, or mortgage this Lease or any interest hereunder.

(Doc. No. 3-2 Ex. A art. 7).  It is clear from the above that none of the tenant's obligations under the lease agreement require occupancy of the premises, or require the tenant to provide written notice if it chooses to so vacate.  With respect to use and occupancy, the tenant only has a contractual duty to use

---

[5]  "Permitted Use" is defined as "General Office including, without limitation, use as a broker/dealer in the retail sale and/or brokerage of stocks, bonds, commodities and securities, corporate finance, real estate, insurance and uses ancillary thereto or any other lawful office use."  Art. I.

[6]  The covenant against assignment and subletting is the only negative covenant under Article 7.  The other mutual covenants and miscellaneous provisions found within Article 10 do not pertain to any requirement of occupancy.

the premises for the permitted use[7] and is restricted from assigning, subleasing, or conveying the leasehold to a third party. The terms concerning the surrender of premises are also limited to the expiration or early termination of the lease, which has not happened here. Therefore, because there is no contractual duty to occupy, the defendant's failure to occupy the premises cannot constitute an anticipatory breach.

Third, this court agrees with the defendant that its continued payment of rent combined with the absence of any allegation that it has refused to pay future rent "is wholly inconsistent" with an absolute and unequivocal refusal to perform. (Doc. No. 3). As the court in 2401 Pennsylvania Avenue noted, courts will also examine a party's words and conduct to determine whether it was reasonable for the other party to assume that an anticipatory breach occurred. 466 A.2d at 137. For example, a lessee who continues to "meet and negotiate with the lessor . . . support[s] the conclusion [that] the lessee's words and conduct were not an 'unequivocal' refusal to perform." Id.; see also 8 Summ. Pa. 2d Property § 26.35. The defendant also cites Greylock Arms, Inc. v. Kroiz, 879 A.2d 864, 867 (Pa. Commw. Ct. 2005), in which the court held that there was no anticipatory breach of the lease because the lessee

---

[7] Where a provision states that the premises are to be used only for a certain prescribed purpose, the law in Pennsylvania is clear that "such a provision is a covenant against a non-complying use, not a covenant to use." 2401 Pa. Ave., 466 A.2d at 138 (quoting Dickey v. Phila. Minit-Man Corp., 105 A.2d 580, 581 (Pa. 1954)).

"maintained throughout that it could and wished to perform." Here, the defendant <u>continues</u> to perform by paying rent, which demonstrates that the defendant still wishes to "meet and negotiate" with the plaintiff over the course of the lease term. The continued payment of fixed rent also militates against any possibility that the defendant has abandoned or surrendered the premises. Because the defendant has not unequivocally refused or indicated its inability to fulfill any of its obligations under the lease, the plaintiff has failed to set forth a valid claim for anticipatory breach. It should also be noted that even if anticipatory breach were properly alleged, the plaintiff would not be entitled to acceleration of future rent because the lease agreement does not so provide. <u>See</u> <u>Onal v. B.P. Amoco Corp.</u>, 275 F. Supp. 2d 650, 669-71 (E.D. Pa. 2003). Count III will therefore be dismissed.

## IV.    Conclusion

For the foregoing reasons, the defendant's partial Motion to Dismiss Counts II and III of the plaintiff's complaint, **(Doc. Nos. 3, 4)**, will be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

Dated: March 12, 2008
O:\shared\MEMORANDUMS\2007 MEMORANDUMS\07-1220.01.wpd

13